IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

| | | |
|---|---|---|
| JASON WALKER; KACY DANIEL; ANTONIO DANIEL; VANCE PERRY; and TRENTON BOYD | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | CIVIL ACTION FILE NO. _____ |
| KASIM REED, in his official capacity as Mayor of the CITY OF ATLANTA; STALONE DAVIS, individually; BRANDON JACKSON, individually; CHRISTOPHER LANIER, individually; CAYENNE MAYES, individually; JUAN ORTIZ, individually; REGINALD PETTIS, individually; DIMITRI CALDWELL, individually; ANTONIO BLASINI, individually; ZOEL MURPHY, individually; LUCA AMARENA, individually; VICTOR GUEVARA, individually; DEREK CHAO, individually; DARNELL PERRY, individually; and JOHN DOE 1 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

_____ )

**<u>COMPLAINT</u>**

COME NOW Plaintiffs Jason Walker, Kacy Daniel, Antonio Daniel, Vance Perry and Trenton Boyd who bring this Complaint seeking damages and declaratory relief against Defendant City of Atlanta and the individual Defendants, pursuant to 42 U.S.C. § 1983, as well as relief under Georgia law against the individual defendants.  This action arises from the unlawful searches and seizures and public strip-searches of the Plaintiffs by the individual Defendants, pursuant to a custom, policy and/or practice of the Atlanta Police Department ("APD").

JURISDICTION

1.

This action arises under the authority vested in this Court by virtue of 42 U.S.C. §§ 1983, 1988; 28 U.S.C. § 1331, and 28 U.S.C. § 1343, the Fourth and Fourteenth Amendments of the United States Constitution, and pendent jurisdiction to 28 U.S.C. § 1367.  This Court is authorized to grant declaratory relief pursuant to 28 U.S.C.A. § 2201 and 28 U.S.C. § 2202.

VENUE

2.

Venue is proper in this Court pursuant to 28 U.S.C.A. § 1391.  The City of Atlanta, Georgia, ("Atlanta") is within this judicial district and a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

PARTIES

3.

Plaintiff Kacy Daniel ("Kacy Daniel") is a resident of Georgia.

4.

Plaintiff Antonio Daniel ("Antonio Daniel") is a resident of Georgia.

5.

Plaintiff Vance Perry (" V. Perry") is a resident of Georgia.

6.

Plaintiff Trenton Boyd ("Boyd") is a resident of Georgia.

7.

Kasim Reed is sued in his official capacity as mayor of the City of Atlanta ("Defendant City of Atlanta"), a City chartered under the laws of the State of

Georgia and subject to the jurisdiction and venue of this Court.  The Atlanta Police Department ("APD") is a division of Defendant City of Atlanta.

8.

Defendant Stalone Davis ("Davis") was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint.  He is sued in his individual capacity.

9.

Defendant Brandon Jackson ("Jackson") was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint.  He is sued in his individual capacity.

10.

Defendant Christopher Lanier ("Lanier") was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint.  He is sued in his individual capacity.

11.

Defendant Cayenne Mayes ("Mayes") was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint.  He is sued in his individual capacity.

12.

Defendant Juan Ortiz ("Ortiz") was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint.  He is sued in his individual capacity.

13.

Defendant Reginald Pettis ("Pettis") was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint.  He is sued in his individual capacity.

14.

Defendant Dimitri Caldwell ("Caldwell") was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint.  He is sued in his individual capacity.

15.

Defendant Antonio Blasini ("Blasini") was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint.  He is sued in his individual capacity.

16.

Defendant Zoel Murphy ("Murphy") was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint. He is sued in his individual capacity.

17.

Defendant Luca Amarena ("Amarena") was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint. He is sued in his individual capacity.

18.

Defendant Victor Guevara ("Guevara") was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint. He is sued in his individual capacity.

19.

Defendant Derek Chao ("Chao") was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint. He is sued in his individual capacity.

20.

Defendant Darnell Perry ("D. Perry") was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint. He is sued in his individual capacity.

21.

Defendant John Doe 1 was an officer of the Atlanta Police Department and acted under color of state law at all times pertinent to the allegations in this Complaint. He is sued in his individual capacity. John Doe 1 is an African-American male, approximately 5' 10", medium-build with short hare, and may be Officer Rodney Jefferson.

22.

Collectively, the individual defendant police officers named above shall, at times, be referred to below collectively, as indicated by the attentive fact and circumstances as the "Defendant Officers".

## ALLEGATIONS REGARDING MUNICIPAL LIABILITY OF DEFENDANT CITY OF ATLANTA

### Common to all Plaintiffs

### Unconstitutional Policies, Customs, and Practices

Custom, Policy and/or Practice of Public Strip-Searches

23.

At all times relevant to the events described in this complaint the APD, and in particular its "Red Dog Unit," had a custom, policy and/or practice to perform strip searches and body cavity searches in public. Among other examples to be proven at trial are:

a.    The body cavity search of Ronald McNair performed by Defendant Davis in the field on December 9, 2008, during which Defendant Davis searched McNair's "anal cavity" according to his own statement in APD incident report #083441853;

b.    the body cavity search of Chaddrick Hood conducted in the field on February 19, 2010, during which the officer "conducted a search of Hood's rectal cavity" according to the statements in APD incident report #100501758;

c. The search and touching of the genitals of Clarence Smith, a 23-year old man, in the dressing room of a department store on November 26, 2007, by APD officers Cayenne Mayes and Reginald Pettis;

d. The strip search of Shawn Venegas conducted on a public street by Red Dog Officers Cayenne Mayes, Dion Meredith, and Travis Britt on June 30, 2010;

e. The search and touching of the genitals of 17-year old Olajuwan Wilson in a convenience store by Red Dog officer Jonathan B. Cornelius on September 28, 2010;

f. The public strip search of Plaintiff Kacy Daniel on May 20, 2010, as described herein;

g. The public strip search of Jason Walker on September 30, 2009, as described herein;

h. The public strip search of Plaintiff Vance Perry on June 29, 2010, as described herein; and,

i. The public strip search of Plaintiff Trenton Boyd on March 20, 2010, as described herein.

<u>Custom, Policy and/or Practice of Detention, Search & Seizure Without
Reasonable Articulable Suspicion or Probable Cause</u>

24.

At all times relevant to the events described in this complaint the Atlanta
Police Department ("APD"), and in particular its "Red Dog Unit," had a policy,
custom, and/or practice to stop, frisk, and search persons without reasonable
suspicion or probable cause.  Among other examples to be proven at trial are the
following:

a.     the unlawful stop, search, and arrest of Kelvin Bryant on October 16,
       2008, by Defendant Brandon Jackson, along with Red Dog officers
       James Menzoian, William Porter, and Jason Overbaugh, about which
       a federal judge found "that the officers did not have probable cause
       or even reasonable suspicion to stop [Bryant's] vehicle." (See United
       States v, Kelvin Bryant, 1:09-CR-018-JEC, U.S.D.C.-N.D.Ga);

b.     the unlawful stop and search of Shawn Venegas and Brian Kidd by
       Red Dog Officers on June 30, 2010 (for which the City of Atlanta
       eventually paid a settlement of $200,000.00);

c.     The unlawful search and seizure of dozens of persons not suspected
       of any criminal activity during the "Atlanta Eagle bar raid" in
       September, 2009 (for which the City of Atlanta eventually paid a
       settlement of $1,025,000.00);

d.     The unlawful search and seizure of persons not suspected of any
       criminal activity during the "Ruby's Sanabella Restaurant and
       Lounge raid" in May, 2010; and,

e.     The unlawful seizure of James Hereford on August 5, 2010 (for
       which the City of Atlanta eventually paid a settlement of $50,000.00).

<u>Unconstitutional Policies & Procedures</u>

25.

The searches and seizures of Plaintiffs described herein were conducted
pursuant to unconstitutional official policies of the Atlanta Police Department
which authorize suspcionless seizures, frisks, and searches, including Standard
Operating Procedure 3065 (which authorizes and instructs officers to detain and
frisk individuals without regard to reasonable articulable suspicion) and
Standard Operating Procedure 3020 Section 4.3.1 (which authorizes officers to
perform warrantless searches without probable cause).

Acquiescence & Deliberate Indifference to Unconstitutional Practices

26.

As described herein, the policy of conducting strip and/or body cavity searches in public was widespread and well-known within the APD and so widely tolerated that Atlanta Police officers openly described these searches in their own publicly available incident reports, as described in Paragraph 23. This policy was tolerated, condoned and acquiesced to by senior policy makers in APD, and this was a moving force behind the conduct described herein.

27.

As described herein, the policy of conducting unlawful searches and seizures without reasonable articulable suspicion or probable cause was widespread and well-known and widely accepted by APD. This policy was tolerated, condoned and acquiesced to by senior policy makers in APD, and this was a moving force behind the conduct described herein.

## Failure to Train and Discipline

### 28.

Prior to the conduct described herein, the City of Atlanta was aware of pervasive violations of the Fourth Amendment by APD officers.  Among other incidents to be proven at trial are the following:

a.  The unlawful search of 1056 Dill Avenue by Sergeant Wilbert Stallings and other APD officers in October, 2005 (for which Sgt. Stallings was sentenced to 18 months in federal prison);

b.  The unlawful arrest of Deborah Schowalter in January, 2006 (for which the City of Atlanta eventually paid a settlement of $25,000.00);

c.  Various Fourth Amendment violations associated with the death of Kathryn Johnston in November, 2006 (for which the City of Atlanta eventually paid a settlement of $4,900,000.00);

d.  The unlawful stop and arrest of Kelvin Bryant on October 16, 2008, by Atlanta police officers Brandon Jackson, James Menzoian, William Porter, and Jason Overbaugh, about which a federal judge found "that the officers did not have probable cause or even reasonable suspicion to stop [Bryant's] vehicle." (See United States v. Kelvin Bryant, 1:09-CR-018-JEC, U.S.D.C.-N.D.Ga);

e.    The unlawful arrest of Minnie Carrie in March, 2009 (for which the City of Atlanta eventually paid a settlement of $20,000);

f.    The unlawful search, seizure, and arrest of dozens of innocent bar patrons during the Atlanta Eagle bar raid (the "Atlanta Eagle Raid") on September 10-11, 2009 (for which the City of Atlanta eventually paid a settlement of $1,025,000.00).

29.

The APD's lack of training regarding the requirements of the Fourth Amendment, prior to the incidents complained of herein, is also demonstrated by the following:

a.    On July 14, 2009, the Atlanta Citizen Review Board ("ACRB") recommended that the Atlanta Police Department conduct training regarding Fourth Amendment issues including "Terry stops."  The Chief of Police rejected this recommendation.

b.    In connection with its investigation of the Atlanta Eagle Raid the ACRB reviewed "records concerning the department's in-service training for officers during 2008 and 2009.  There was no indication officers received training concerning constitutional law."

    c.      The ACRB "Study of Supervisory Responsibility" regarding the Atlanta Eagle Raid also reported that: "It became evident during the course of the investigation that many officers are unfamiliar with the constitutional requirements for conducting a search and/or seizure."

    d.      Deposition testimony and other statements related to the Atlanta Eagle Raid by senior APD commanders including former Chief Richard Pennington, Deputy Chief Carlos Banda, and Major Debra Williams also suggest a pervasive lack of training regarding basic Fourth Amendment concepts such as the requirements of a lawful Terry stop; the requirements of a lawful frisk; and the definition of an arrest, among other subjects.  These statements suggest both the failure of the Atlanta Police Department to train these employees themselves, as well as the improper training provided by senior commanders to the subordinates who look to them for guidance.

30.

Despite knowledge of these pervasive Fourth Amendment violations the City of Atlanta acted with deliberate indifference to the rights of persons, such as Plaintiffs, with whom the police would come into contact by failing to provide

appropriate training, guidance and discipline to APD officers regarding the requirements of the Fourth Amendment.

31.

The Atlanta Police Department has also demonstrated a pervasive failure to discipline police officers for unreasonable searches and seizures under the Fourth Amendment, and other violations of law. Among other examples to be proven at trial, although the Atlanta Citizen Review Board ("ACRB") has sustained complaints against dozens of police officers for unlawful conduct the Atlanta Police Department has a pattern of not following the ACRB's recommendations to impose discipline. Additional factual information about this pattern is available on the website of the ACRB at http://acrbgov.org , including, among other references, http://acrbgov.org/case-10-7-complaint-brian-kidd/ .

32.

At all times relevant to this Complaint, the Defendant Officers, as police officers of the City of Atlanta, were acting under the direction and control of APD and were acting pursuant to the official custom, policy and/or practice of the City of Atlanta.

33.

As a direct and proximate result of the acts of the City of Atlanta as set forth herein, the Plaintiffs suffered physical injury, mental anguish, lost wages, and other general and special damages in connection with the deprivation of Plaintiffs' constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and protected by 42 U.S.C. §1983 and are thereby entitled to a judgment against the City of Atlanta for those damages and injuries suffered.

## ALLEGATIONS OF PLAINTIFF JASON WALKER

34.

Plaintiff Walker incorporates the allegations set forth in paragraphs 1 through 33, as if fully set forth herein.

35.

Plaintiff Walker was driving his vehicle along Chappell Road in Atlanta, Georgia, on September 30, 2009.  He observed a marked patrol car belonging to APD's Red Dog Unit traveling in the opposite direction.

36.

As he was turning into the Chappell Forrest Apartment complex, Walker was "blue-lighted" and stopped by the APD vehicle which contained Defendants Davis, Jackson, and Lanier – all members of the APD's now-disbanded "Red Dog Unit."

37.

Immediately after stopping Walker's car and without advising Walker why they had stopped him, one of the Defendants ordered Walker out of the vehicle and handcuffed him.

38.

Defendant Davis immediately frisked Walker.

39.

Defendant Davis ordered Walker to open his mouth and Davis shined a flashlight into Walker's mouth.

40.

With Walker still handcuffed, Defendant Davis pulled down Walker's pants to mid-thigh, exposing Walker's genitals to public view.  Several witnesses unconnected to the incident saw Walker's exposed genitals during this search.

41.

While Defendant Davis was searching Walker's person, Defendants Jackson and Lanier searched Walker's car.

42.

These Defendants neither requested nor received consent to search Walker or Walker's vehicle.

43.

These Defendants did not find any drugs, weapons, or contraband of any kind on Walker's person or in Walker's vehicle.

44.

After searching Walker and his car these Defendants issued Walker a citation for a malfunctioning tail light and released him.

45.

These Defendants never submitted the citation they issued Walker, and the charge was never entered into the Atlanta Municipal Court docketing system; the citation simply "disappeared."

<u>**PLAINTIFF WALKER'S FIRST CLAIM FOR RELIEF**</u>

<u>**Unreasonable Search and Seizure under the
United States' Constitution**</u>

**(By Plaintiff Walker against Defendants Jackson,
Davis, Lanier & City of Atlanta)**

46.

Defendants Jackson, Davis & Lanier had no reason to suspect Walker of any criminal activity when they stopped his vehicle and had neither reasonable articulable suspicion nor probable cause to seize Walker.

47.

The seizure of Walker without a warrant, reasonable suspicion, or probable cause was unreasonable under the Fourth and Fourteenth Amendments to the United States Constitution.

48.

These Defendants violated clearly established law; no reasonable officer could have believed that it was lawful to stop and seize Walker without a warrant, reasonable suspicion, or probable cause.